Good morning. May it please the court. Ryan Stitt Federal Defenders on behalf of the appellant, Mr. Garcia-Ocampo. The government must show in this case that the three and a half year delay between the issuance of the warrant and its execution was both reasonable and necessary. That is simply a burden the government cannot meet in this case. The government... Just a minute. When you say the government cannot meet in this case, how much deference do I give to the district court? Well, this is... How much deference do I give to the district court? The standard of review is de novo, so... I understand the standard of review is de novo. But like every jurisdiction, the case that appears in front of this court, me being an old DJ, I say to myself, but the facts underneath the jurisdictional review are generally reviewed for clear error. Why isn't reasonably necessary just a factual determination? I believe the district court's decision in denial of the motion to dismiss on the unreasonable delay should get little deference from this court. You didn't answer my question. Why isn't reasonably necessary just a factual determination? Or better, why aren't the district court's determinations of what the facts were subject to clear error review? Because I read the district court's decision. I read what he said. He said, and I quote, Mr. Garcia argues the government knew the address because it was stated. However, the police report relates to his 2009 arrest for armed robbery. It does not prove that Garcia's residence during the prior two years where the government knew where he was. That's his factual finding. That's correct. That factual finding was made in error. At the motion hearing conducted on the motion to dismiss, the court's order that this court just quoted from was distributed at the beginning of the motion hearing. Counsel had an opportunity to review it briefly. And then the court heard argument. I pointed out to the court that, in fact, Mr. Garcia Ocampo's address was known to the government during the period of delay. And then Mr. Manahan agreed with me. I point the court to page 70 of the excerpts of record. Mr. Manahan. So I can just reach over the top of the DJ and apply my interpretation of this, whatever I want to interpret it, that's fine. So because it's de novo, if I want to say district court was right, I'm okay. I don't even have to say he's right. I can just say the facts are the same as he saw. I don't have to have any reference to what he said. I just do my own interpretation. And if I think it's okay, it's okay. Is that what you're arguing? Well, not exactly. My argument is that the district court issued its ruling before it had all of the facts. And then at the motion hearing on the motion to dismiss, after the district court's order was distributed, Mr. Manahan said, quote, we agree with defense counsel that there was a delay of approximately before his robbery arrest for two years where there was an address they could have looked at and there's no evidence that they did. And that's at page 70 of the excerpts of record. Then subsequent to that motion hearing date, there was an evidentiary hearing where the court found Mr. Garcia Ocampo in violation. At that evidentiary hearing, the probation officer testified, and this is on page 22 of the excerpts of record, that the probation office knew Mr. Garcia Ocampo's address when it issued the warrant for his arrest, and that it took no action to execute the warrant at that address or contact him there. What if I were to apply the doctrine of fugitive tolling? The government did not raise the fugitive tolling doctrine. So what? I can approve this on any basis whatsoever. Well, arguments not raised below are generally waived. And to apply the fugitive tolling. Oh, they're not generally waived. They're not generally waived when I can apply any basis I want to to find to affirm the district court decision. Well, when that's true, I would agree with that principle. However, if new factual findings need to be made by this court in order to apply the new legal doctrine, then I would argue it has been waived because these are facts. And maybe what I have to do, if I need to find new facts, is remand to the district court to apply fugitive tolling to this particular situation, since it wasn't raised below and which when I think it might be applicable and might result in the same decision he made. Isn't that what I need to do? With all due respect, Your Honor, no. Why? Mr. Garcia Ocampo filed a motion to dismiss on this very basis before the district court. The government filed a response. It did not raise the fugitive tolling doctrine. It did not seek its protection. And it raises this for the first time on appeal. They simply waived the issue. How did we waive it when I can apply it in reaching the same decision as the district court, except that I don't know exactly what the facts are, so I ought to send it back and let him have another shot at it? Well, with all due respect, even if the court applies the fugitive tolling doctrine in this case, Mr. Garcia Ocampo still wins. And the reason is that the fugitive tolling doctrine applies when an individual becomes a fugitive, and it ends when probation is capable of resuming supervision. Now, that's the rule from Watson, one of the cases the government relies on in invoking the fugitive tolling doctrine. In this case, Mr. Garcia Ocampo was found by the probation office from the moment it issued the warrant. It had his address on Troy Street in Chicago, Illinois. Mr. Stitt, would you concede that the fugitive tolling doctrine would apply at least as to that portion of the time period? I guess it would be about a year and a half while he was in the custody of Illinois officials. The fugitive tolling doctrine I don't believe would apply during that one-and-a-half-year period, although Garrett would. And the court has found that when an individual is in state custody, that that period of delay is reasonably necessary. So if the fugitive tolling doctrine can apply to the time before he's in state custody, then he would be subject to this sentence, wouldn't he? No. I would point the court to the summary. Well, but we've only got him when he's not in state custody or when he's a fugitive, question of fact of when he's a fugitive. We've only got those two periods. We know that when he's in state custody, reasonably necessary would take care of the problem. The only time we haven't got a problem is whether he's when he's not in the state custody, and that would determine whether he's a fugitive under fugitive tolling. So at that point, we need to make a determination whether he would be a fugitive or whether he wouldn't. Wouldn't we? Not exactly. The finding the court would need to make is that the probation office was incapable of resuming supervision during this two-year period. That's if he wasn't under a – if he weren't a fugitive. Well, respectfully, the fugitive tolling doctrine is a two-pronged analysis. The first is that the individual is a fugitive or the probation office is incapable of resuming supervision. That triggers tolling. On the date that he reentered, would you agree that 72 hours after his illegal reentry, he failed to report to the San Diego probation office as he was originally ordered to do when he was originally sentenced? And at that point in time, as far as San Diego is concerned, he is now a fugitive. Would you agree to that statement? I would agree that he did not report. I'm reluctant to concede a factual finding that was not made below. But even if the court were to find – Well, I'm offering you a life saver here. This really was a soft pitch because I think the answer is yes. And that clock then stops until, as I understand your argument to be, he gets arrested in, what is it, August by Chicago police on the criminal trespass charge? That's right. And the probation officer in San Diego learns from Chicago authorities that he's been arrested and here's his home address in Chicago. That's right. So you would agree that that period, that period from whatever day it was that he was arrested – or excuse me, that he illegally reentered and the date that he was arrested in Chicago and the probation officer was notified, he would be a fugitive during that time period insofar as the authorities in San Diego are concerned? Yes. And as soon as San Diego learned his address and issued the warrant, the government must show then that the subsequent two-year delay where he was out of custody and they knew his address, that their failure to take any action to execute the warrant was both reasonable and necessary. They've simply offered no compelling reason for what happened during this two-year delay, why they failed to go and execute the warrant. This case is directly on point with Hill. So does the application of the doctrine, in your view, turn on the good faith effort of the government to try and find a fugitive? Because we have lots of cases where we issue warrants for the arrest of people with a last known address, but for whatever reason, when the marshals or whoever it is that's serving the warrant go out to look for him, he's not there. So the fact that we know what his address was on the date that he was arrested in Chicago, as I understand your argument means then the fugitive status stops at that point even though nobody went to that address under your theory and looked for him. It's correct. It stops when probation is capable of resuming supervision. But they can't resume supervision until they get him back into custody. That's the problem. And he's not in custody at that point. Well, in Maria Oliveros, for example, this is another fugitive tolling case. This is where an individual came back after an illegal reentry sentence and was deported. Probation learned his address, sent him a certified letter instructing him to report at that address. He failed to do so, and the court found then that he was a fugitive, and then it tolled subsequent to that because there was some effort taken. So is the record completely devoid of any steps that the probation officer took other than procuring an arrest warrant from the district judge in San Diego? Yes. Not only is it void at the evidentiary hearing when asked, did probation do anything to execute this warrant? The response was no. Why did – I guess what I – well, maybe I should ask government counsel, and he might be – and you're over your time. I'll give you some time on rebuttal. Let me pick up with your opponent here and have him enlighten you. Mr. Manahan, I warn you that you have a heavy burden with me because I can't see that the government did anything here other than procure an arrest warrant. So can you help me out with what it was that the government did? Sure, Your Honor. George Manahan for appellate of the United States. May it please the Court. The parties have agreed that the efforts taken by the deputy U.S. marshal to execute the warrant cannot timely be refuted. We made part of the record because at the time of the hearing where this issue was raised, the deputy U.S. marshal who made efforts was unavailable on military duty. However, that is not relevant to the Court's analysis of whether – when the fugitive tolling doctrine ended. Your Honor was absolutely right. It's clear that it started at some date when he illegally entered. And, unfortunately, the – we can only say that it was no later than the date he was found in Chicago and arrested in trespassing, which was, I believe, August of – August 15, 2007. Now, the – But he wasn't kept in custody, right? No. He was picked up by Chicago PD on a criminal charge. He's fingerprinted and released, and the next hearing the trespassing charges are dropped. So he's gone. Well, gone only – Chicago is no longer – Gone only in the sense that he's not in the Cook County Jail, but – Gone only is he not in the Cook County Jail, but the Chicago authorities are no longer interested in him. Right. But we do have – we, the government, the probation officer, has what he offered as his home address in Chicago to Chicago police when he was arrested on criminal charges. Right. So the Chicago police report that probation received approximately two weeks later had a residential address listed, which is, I suppose, what he told the police officer was his address when he was arrested in the park for trespassing. However, this Court's law is clear that in order to – for supervision – for authorities to be able to – to be capable of resuming supervision, which is the trigger for ending the tolling doctrine, it's – the supervisor leesee has to be following the rules. So, for instance, in Hill, which is the case that appellant relies upon, the Court specifically found that Hill did not contribute to the delay of executing the warrant. He remained in the proper jurisdiction. He was in communication with the probation officer. In this case, we have the complete opposite. The supervisor leesee, Mr. Garcia Ocampo, chose to spend – go halfway across the country from the jurisdiction where probation was, Chicago rather than San Diego. He chose – and, by the way, I think you said 72 hours. This is – the requirements of a supervisor leesee were to report within 24 hours. Okay. And that's on page 114. I stand corrected. Okay. So he's a fugitive 24 hours after some unknown date when he crossed the border. Which is no later than August 15th. But, philologically, it has to be before that because that's when he's found in Chicago. And it continues until the federal authorities are capable of resuming supervision. Isn't that what we're arguing about here? That's absolutely true. And nobody has given us any factual finding, or nobody has even talked to the district court about that, correct? I'm sorry. I mean, has the district court even weighed in on fugitive tolling, or looked at it, or thought about the facts of it? Because we're really talking about when federal authorities are capable of resuming supervision. The district court affirmed the government's argument that it was a slightly different argument. It was reasonably necessary delay. Yes, it is a totally different argument. Yes. Because the reasonably necessary doesn't have anything to do with fugitive tolling. Fugitive tolling is when the statute expires. That's correct. The district court followed the United States lead, I might add. Basically, I think this is the better argument. It was raised, by the way, at page 81, footnote 11. It was raised by the United States, but it wasn't the main argument. However, as you correctly pointed out, number one, this court can affirm on any basis supported by the record. Number two, it's issues that are waived, not arguments. And number three, I did bring it up. So, I mean, this court has multiple reasons why it can consider this argument. I still don't understand, though. Somebody talked to the probation officer from Chicago in August of 2007 because the probation officer prepared his application for an arrest warrant, and he got an arrest warrant. Was there any testimony by the probation officer? I then notified the authorities in Chicago that I was going to get a federal detainer on this guy and that we wanted him back here in San Diego. There was no specific testimony. What was, was there was argument raised by the government that argument doesn't help me. I need a fact here. I don't have any fact. But it seems to me you were suggesting that there were some facts that aren't in the record. Is that what you're saying? That's correct. The government alerted the district court that the deputy U.S. marshal, whose job it was to then, you know, he gets the warrant, he's like trying to find the guy. He's not available. He actually, the parties agreed that the declaration he later gave that describes. He was struck, right? Was to be struck because it wasn't timely. He wasn't, I didn't have it at the time of the hearing. It was about two days before the hearing on the merits, having nothing to do with future tolling, just whether he violated his supervisor's release. At that point, I didn't think like, oh, I might need this for appellate purposes. So I didn't say, hey, Your Honor, I know you've already decided the issue of whether the motion is dismissed, but can you look at this declaration that further supports my arguments? So if this Court were to believe that some sort of balancing is necessary versus the wrongness of the supervisor's release, see, illegally entering the United States, being halfway across the country, not communicating with his probation officer as he's supposed to, if that in and of itself is enough to say that, is the reason why probation officer was not able to resume supervision. But if this Court feels that, no, but I also got to take into account what the marshal did, then I suppose you would have to remand that. But I don't think ---- Kennedy, I don't understand how Judge Thompson made the findings that he made. I'm looking at ER11, the little four-page order that he wrote, starting at line 15 and going down to the bottom of the page. As I understood, Mr. Stitt, he prepared the order before he bothered to hear any testimony at the hearing, which is an interesting way to conduct an evidentiary hearing, but I suppose you could do that. Well, I believe what he did was he basically said this is my presumptive order. I'm giving it to you so that you can focus your arguments on ---- Basically, there was one mistake. You called witnesses at the hearing.  This was the order for the motion to dismiss. Right. Did you call any witnesses or did you supply declarations? At the motion to dismiss, no. It was a legal argument. I'm trying to figure out where the district court got the facts from, from the arguments that the parties were making in their moving papers. Well, I'm sorry. I did submit the documents, yes. What documents? There was the Chicago Police report. Yeah. Basically ---- The Chicago Police report, the petition for the supervised release revocation, and a copy of the warrant for his arrest. What else did the district court have? I'm trying to not confuse it with the later hearing that we had. I believe he had the warrants of deportation, I believe, which showed when he was deported. I think it was later that he had the testimony from the probation officer that the supervised release scene made no effort to communicate with the probation office after illegally re-entering the United States. So, I'm not sure. He may have. I can't remember at which hearing he had that, but he would have that piece of evidence at some point. Did the probation office make any effort to contact their counterparts in Chicago? No. I mean, this is the federal government. Right. The probation officer basically left it up to the Deputy U.S. Marshal to execute the warrant. But he got shipped overseas and apparently didn't hand this file to any of his colleagues left behind. Well, he got shipped overseas years later at the time of the hearing. He was ---- Oh, I see. So, he might have been able to enlighten us as to what, if anything, he did. Yes. The parties agreed to strike the declaration of what he did, which is in the record. So, if the court felt ---- Well, should we remand this? I mean, I don't think so because I think the law is clear. Well, but just a minute. I hate to do this because somebody is going to tell me what a terrible person I am. But we have a recent unpublished case, United States v. Williams, where we're in the same kind of a boat as they are. And it's one of our circuit's decisions. They found themselves in the same spot we're in. And they said, Now, listen, we got a defendant who ought not get any help because he's the one who caused this. We got the government acting pretty, in our mind, not appropriately. So, let's send it back to the district court and have him ferret this out and decide whether fugitive tolling should apply. And let's do it. I mean, that's not binding on me, but, I mean, that's what made me think about it. I'm really looking at the bottom line is it starts when he absconds and it ends when federal authorities are capable of resuming supervision. And Delamora doesn't even say that the federal government is capable of assuming supervision while the federal authorities know he's in state custody. And my case, Ignacio Juarez said once he's in state custody, that's the end. And Watson says there's other situations you ought to look at. So here we have a case where the district court hasn't got all the facts in front of it. Nobody's talked about fugitive tolling to him. Maybe you mentioned it in a footnote, but nobody. Why not send it back and let the district court determine what to do with the doctrine? For two quick reasons. Number one, the probation officer having a document in his hand that is a residential address, in and of itself, is not enough to make him capable of resuming supervision. Secondly, the law is clear that he should not receive credit when, by virtue of his own actions, he was not observing the terms of a supervised release. His own actions were illegal in the United States, being halfway across the country, and not contacting the probation office. Mr. Manahan, I agree with all of that. But what's missing here and what I'd really like to see to justify a three-and-a-half-year delay is some evidence that the deputy U.S. marshal, upon receipt of the arrest warrant, either contacted the U.S. marshal's office in Chicago and said, would you please go out and execute this warrant, here's the home address, last known address for the defendant, or at least entered the warrant into NCIC so that when he was arrested again on the robbery charge, a detainer would have been lodged while he was due in time, 18 months in the custody of Illinois officials, so that then he would have been ridded out when the state of Illinois was done with him. But I don't see any evidence of that. I don't know what to make of this record. All I know is I've got a three-and-a-half-year delay between the issuance of the arrest warrant and when he finally gets hailed back into court in San Diego and is given more time for the supervised release violation, which has long since expired. And frankly, if we go on reasonably necessary, I don't think you make it, based on just what my colleague has said. I don't know how I can apply this to reasonably necessary. Under reasonably necessary, the only thing I've got is if you're in state custody, you've got a chance. But otherwise, I've got nothing. So if you're not going to get it on fugitive tolling, in my view, you're not going to get it. Correct. And I don't believe that the fugitive tolling doctrine rests on the actions that the government took if it's the supervised release's fault why they can't resume supervision. However, since the government agreed to strike page 15 of its supplemental experts of record, which shows which we have. I haven't looked at it because we struck it. Which is what the Deputy U.S. Marshal said. If you believe that that's necessary, then I think you would have to remand so that that document could be entered or he would testify similarly. Okay. All right. Thank you both. Mr. Stitt, unless you have anything further to say, I think we have the issues well in mind. Thank you, Your Honor. All right. The case just argued is submitted.
judges: Burgess, Tallman, Smith